| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
|---|---|
| COUNTY OF ROWAN | SUPERIOR COURT DIVISION |
| | FILE NUMBER 21-CVS 229 |
| TIMOTHY HAWKINS, | |
| Plaintiff, | |
| v. | COMPLAINT (Jury Trial Demanded) |
| PEDULLA TRUCKING, EXCAVATING & PAVING, INC, | |
| Defendant | |

COMES NOW the Plaintiff, Timothy Hawkins, by and through the undersigned counsel, who does allege and say of Defendant Pedulla Trucking, Excavating & Paving, Inc. (hereinafter "Pedulla") as follows:

## PARTIES

1. Plaintiff Timothy Hawkins (hereinafter "Hawkins") is an individual and resident of Salisbury, North Carolina and was employed by Defendant Pedulla within the State of North Carolina.

2. Defendant Pedulla Trucking Excavating & Paving, Inc. is a North Carolina Corporation with its principal place of business in Mooresville, N.C.

## JURISDICTION AND VENUE

3. The North Carolina General Court of Justice has personal jurisdiction over the Defendant by virtue of the Defendant's residency within this State and by virtue of the incidents giving rise to this complaint having occurred within this State.

4. The North Carolina General Courts of Justice have subject matter jurisdiction over this action.

5. The Superior Court Division of the North Carolina General Court of Justice in operation in Rowan County is the appropriate venue for this action as said county is the county in which Plaintiff resides.

## FACTS ALLEGED

6. Hawkins was employed by Pedulla at all times relevant to this Complaint and Pedulla exercised control over Hawkins' schedule, set the terms and conditions of his pay, and established requirements and standards for his job performance.

7. Hawkins began employment with Pedulla on or about August 12, 2019 in the position of Screed Operator and continued in this position until his last day at work on or about February 12, 2020.

8. Between August 12, 2019 and December 19, 2019, Hawkins performed his duties as a Screed Operator to the specifications and requirements of Pedulla.

9. Between August 12, 2019 and December 19, 2019, Hawkins was never disciplined for infractions related to quality of work or for attendance related issues.

10. On December 20, 2019, Hawkins was injured at his workplace while carrying 80-pound concrete mix bags, along with loose bricks, through mud at a Pedulla worksite.

11. On December 20, 2019 Hawkins informed the foreman on duty, Bo Speake, of his workplace injury.

12. Due to his injury, Hawkins was unable to return to work after his injury.

13. On December 26, 2019 Hawkins received a medical examination for his workplace injury.

14. After his examination, Hawkins was advised not to return to work on account of his injury.

15. Hawkins was unable to return to work from December 26, 2019 until February 12, 2020.

16. In the interim period, Pedulla was provided with fax copies of doctor's notes indicating that Hawkins was advised not to return to work due to his injury.

17. Pedulla was further aware that Hawkins' injury was related to activities at the workplace as Hawkins had previously informed Bo Speake of his workplace injury.

18. On February 12, 2020 Hawkins returned to work after recovering from his injury to a sufficient degree as to allow him to fulfill his duties.

19. Within a few hours of being returned to the Pedulla job site, Hawkins was verbally informed by Jimmy Soffitt that he was not going to be allowed to return to work.

20. Hawkins was informed that such decision was made by higher level management based on factors relating to insurance.

21. On information and belief, the "insurance factors" referenced by Jimmy Soffitt were actually factors relating to Hawkins perceived disability due to his injury, a perceived decreased likelihood of fully returning from such injury due to his age, and in retaliation for Hawkins taking time off as a result of his injury.

22. Hawkins was further informed by Jimmy Soffitt that he was to return home and wait for a phone call.

23. After February 12, 2020, Hawkins never received any form of correspondence from Pedulla, with the exception of responses filed in legal actions instituted by Hawkins.

24. On February 13, 2020, Hawkins filed for worker's compensation in relation to his workplace injury.

25. On information and belief, Pedulla made the decision not to further contact Hawkins after he filed for worker's compensation on February 13, 2020.

26. On information and belief, Pedulla's decision to terminate Hawkins was based on either the perceived the likelihood that Hawkins would soon file for worker's compensation or the fact that he actually did file for worker's compensation on February 13, 2020.

27. On information and belief, the decision to terminate Hawkins was not actually made until a date subsequent to February 13, 2020.

28. After termination, Hawkins timely filed a complaint with the Equal Opportunity Commission (hereinafter the "EEOC") alleging discrimination based on age and disability and for unlawful retaliatory termination. The EEOC subsequently conducted and completed their investigation and issued a dismissal and notice of right to sue on November 18, 2020.

## FIRST CAUSE OF ACTION
(Wrongful Discharge on the Basis of Disability in Violation of 42 U.S.C. §12101 *et seq.*)

29. Plaintiff hereby incorporates by reference paragraphs 1 through 26 as if fully stated herein.

30. Defendant employed Plaintiff in an at-will capacity until the last day he was allowed to work on or about February 12, 2020.

31. On information and belief, sometime after February 13, 2020, Defendant made the decision to terminate Plaintiff. After such decision was made, Defendant chose to not contact Plaintiff further.

32. Plaintiff was terminated due to his perceived disability and not due to the pretextual reason provided by Defendant.

33. Defendant's termination of Plaintiff was and is in violation of 42 U.S.C. §12101, *et seq.*

34. Plaintiff was and is damaged by Defendant's actions in an amount less than $25,000.00 to be proven with more specificity at trial. This amount includes lost wages and compensatory damages related to the Defendant's wrongful discharge of Plaintiff.

35. The Defendant's actions as alleged in this Complaint were willful and wanton, were in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to recover punitive damages against the Defendant pursuant to N.C. Gen. Stat. §1D-15.

## SECOND CAUSE OF ACTION
(Wrongful Discharge on the Basis of Age in Violation of 29 U.S.C. §623 *et seq.*)

36. Plaintiff hereby incorporates by reference paragraphs 1 through 35 as if fully stated herein.

37. Defendant employed plaintiff in an at-will capacity until his last day of work on or about February 12, 2020.

38. Sometime after February 13, 2020, Defendant made the decision to terminate Plaintiff. After such decision was made, Defendant chose to not contact Plaintiff further.

39. Plaintiff was terminated due to his age and not due to the pretextual reason provided by Defendant.

40. Defendant's termination of Plaintiff was and is in violation of 29 U.S.C. §623 *et seq*.

41. Plaintiff was and is damaged by Defendant's actions in an amount less than $25,000.00 to be proven with more specificity at trial. This amount includes lost wages and compensatory damages related to the Defendant's wrongful discharge of Plaintiff.

42. The Defendant's actions as alleged in this Complaint were willful and wanton, were in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to recover punitive damages against the Defendant pursuant to N.C. Gen. Stat. §1D-15.

### THIRD CAUSE OF ACTION
(Retaliatory Discharge in Breach of 42 U.S.C. §12203)

43. Plaintiff hereby incorporates by reference paragraphs 1 through 42 as if fully stated herein.

44. Defendant employed plaintiff in an at-will capacity until his last day at work on or about February 12, 2020.

45. Sometime after February 13, 2020, Defendant made the decision to terminate Plaintiff. After such decision was made, Defendant chose to not contact Plaintiff further.

46. Plaintiff was terminated due to taking time off due to his injury and not due to the pretextual reason provided by Defendant.

47. Defendant's termination of Plaintiff was and is in violation of 42 U.S.C. §12203.

48. Plaintiff was and is damaged by Defendant's actions in an amount less than $25,000.00 to be proven with more specificity at trial. This amount includes lost wages and compensatory damages related to the Defendant's wrongful discharge of Plaintiff.

49. The Defendant's actions as alleged in this Complaint were willful and wanton, were in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to recover punitive damages against the Defendant pursuant to N.C. Gen. Stat. §1D-15.

### FOURTH CAUSE OF ACTION
(Unlawful Discharge in Violation of the Retaliatory Employment Discrimination Act; N.C. Gen. Stat. § 95-240 *et seq.*)

50. Plaintiff hereby incorporates by reference paragraphs 1 through 38 as if fully stated herein.

51. Defendant employed plaintiff in an at-will capacity until his last day of work on or about February 12, 2020.

52. Sometime after February 13, 2020, Defendant made the decision to terminate Plaintiff. After such decision was made, Defendant chose to not contact Plaintiff further.

53. Defendant was aware of Plaintiff's workplace injury prior to terminating Plaintiff.

54. Defendant was aware Plaintiff may file for worker's compensation prior to terminating Plaintiff.

55. Defendant was aware Plaintiff had filed for worker's compensation prior to terminating Plaintiff.

56. Defendant terminated Plaintiff for making a worker's compensation claim in relation to his workplace injury.

57. Defendant's termination was and is in violation of N.C. Gen. Stat. § 95-240 *et seq.*

58. Plaintiff was and is damaged by Defendant's actions in an amount less than $25,000.00 to be proven with more specificity at trial. This amount includes lost wages and compensatory damages related to the Defendant's wrongful discharge of Plaintiff.

59. The Defendant's actions as alleged in this Complaint were willful and wanton, were in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to recover punitive damages against the Defendant pursuant to N.C. Gen. Stat. §1D-15.

## PRAYER OF RELIEF

NOW WHEREFORE the Plaintiff does pray the Court as follows:

1. That the Plaintiff have and recover a judgment against Defendant in an amount less than $25,000.00, to be proven more specifically at the time of trial, which judgment shall include lost wages, lost benefits, and economic and compensatory damages as allowed by law.

2. That an award of punitive damages against the Defendant be assessed for the Defendant's willful and wanton disregard of the Plaintiff's rights pursuant to N.C. Gen. Stat. §1D-15.

3. That all issues so triable be tried by jury.

4. That the cost of this action be taxed against the Defendants.

5. That an award of attorneys' fees be entered in favor of Plaintiff.

6. For such further and other relief as the Court deems just, fitting, and proper.

This is the ___ day of February, 2021.

**Pope McMillan, P.A.**
Attorneys for the Plaintiff

By: _____
Clark D. Tew
N.C. State Bar No. 41632
P.O. Drawer 1776
Statesville, NC 28687
(704) 873-2131
ctew@popemcmillan.com